IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BANGOR HYDRO ELECTRIC
COMPANY,

No. CV-10-726-HZ

           Plaintiff,

    v.

OPINION & ORDER

BRIDGEWELL RESOURCES, LLC,
JOSEPH PASSADORE, JUSTIN THELIN,
and EDWARD HOSTMANN, INC.,

           Defendants.

Benjamin J. Miller
Craig J. Capon
HARRANG LONG GARY RUDNICK PC
360 E. 10th Avenue, Suite 300
Eugene, OR 97401

Christian Chandler
CURTIS THAXTER STEVENS BRODER

1 - OPINION & ORDER

& MICOLEAU LLC
PO Box 7320
Portland, ME 04112

     Attorneys for Plaintiff

David A. Foraker
Sanford R. Landress
GREENE & MARKLEY, PC
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201

     Attorneys for Defendant
     Edward Hostmann, Inc.

HERNANDEZ, District Judge:

Defendant Edward Hostmann, Inc. moves for summary judgment on plaintiff Bangor Hydro Electric Company's first claim for relief, alleging a violation of § 2-502 of the Uniform Commercial Code or conversion, and all of Hostmann's affirmative defenses: (1) failure to state a claim, (2) derived or quasi-judicial immunity, (3) limited liability under the receiver order, and (4) the existence of a related action from which relief is possible. I grant the motion.

BACKGROUND

Plaintiff Bangor Hydro is an electric transmission and distribution company. Am. Compl. ¶9. Defendant Hostmann is the court-appointed receiver for North Pacific Group, Inc. ("NPG"). Id. at ¶5. The following is an account of events that occurred prior to Hostmann being appointed receiver of NPG. On October 6, 2009, Bangor Hydro issued a purchase order to NPG for 3,000 timber mats–large wooden pallets used to store and transport construction equipment. Decl. of Lisa Martin in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Martin Decl.") Ex. A. The purchase order specified that the timber mats would be 8" x 4' x 16' in size. Id. Beginning

December 18, 2009, NPG sent photographs of timber mats to Bangor Hydro, as directed by the purchase order, and issued an invoice to Bangor Hydro. Id. at Exs. B and C. On January 15, 2010, Bangor Hydro wired $1,164,750 to NPG as payment in full for the 3,000 timber mats. Id. at Ex. E.

Five days later on January 20, 2010, Hostmann was appointed receiver of NPG in a separate action by Judge Garr King. Wells Fargo Capital Finance, Inc. v. North Pacific Group, Inc. et al, No. CV-10-65-KI, Dkt. # 9 ("Order Appointing Receiver"). On February 8, 2010, counsel for Bangor Hydro sent a formal demand to Defendant Hostmann for the timber mats. Martin Decl. Ex. E. That same day, NPG notified Bangor Hydro that its ability to begin partial delivery of the timber mats had been stopped by Hostmann. Decl. of Mena Ravassipour in Supp. of Def.'s Mot. for Summ. J. ("Ravassipour Decl.") Ex. 11, at 1.

After Bangor Hydro's demand, Hostmann investigated the number of timber mats in NPG's inventory. There is a dispute as to the number of conforming (i.e., 8" x 4' x 16") timber mats that NPG had in inventory while Hostmann was receiver. Hostmann claims that fewer than 600 conforming timber mats were in NPG's inventory as of February 9, 2010. Decl. of Peter Lahni in Supp. of Def.'s Reply Ex. 1; Ravassipour Decl. Ex. 13, at 1; Decl. of John Doss in Supp. of Def.'s Reply ¶3. Bangor Hydro disputes this allegation and references a February 11, 2010 email from NPG confirming that all 3,000 conforming timber mats had been identified. Decl. of Julie Washburn in Supp. of Pl.'s Sur-reply Ex. 5.

On February 25, 2010, Judge King signed an order in the Wells Fargo Capital Finance action approving the sale of NPG's assets to Atlas Trading Acquisition LLC, also known as Bridgewell Resources LLC, a co-defendant in this case. Wells Fargo Capital Finance, Dkt. # 82

3 - OPINION & ORDER

("Order Authorizing Sale").  On April 5, 2010, Bridgewell notified Bangor Hydro that some of

the timber mats it had purchased from NPG were gone and suggested that Bangor Hydro work

with Hostmann to recover the missing mats.  Ravassipour Decl. Ex. 21.  At the time this lawsuit

was filed, Bangor Hydro had received a total of 1,292 mats.  Am. Compl. ¶38.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of demonstrating the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)).  Once the initial burden is satisfied, the burden shifts to the nonmoving party to

demonstrate through the production of probative evidence that there remains an issue of fact to

be tried.  Id.  All reasonable doubts as to the existence of a genuine issue of fact must be resolved

against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587

(1986).  The court views inferences drawn from the facts in the light most favorable to the

nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City &

County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

## DISCUSSION

Quasi-judicial immunity[1] stems from the long-recognized common law doctrine of

judicial immunity.  Curry v. Castillo (In re Castillo), 297 F.3d 940, 947 (9th Cir. 2002).  Partly to

promote the use of the appellate process, acts performed by judges that relate to the judicial

---

[1]Courts have also referred to this doctrine as "derivative judicial immunity".  New Alaska
Dev. Corp. v. Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989).

process are immune from attack.  Id.  Quasi-judicial immunity is immunity that extends to

nonjudicial officers for "claims relating to the exercise of judicial functions."  Id. (quoting Burns

v. Reed, 500 U.S. 478, 499 (1991)).  In other words, quasi-judicial immunity protects nonjudicial

officers because their decisions are "functionally comparable" to those of a judge involving the

exercise of discretion.  Antoine v. Byers & Anderson, 508 U.S. 429, 436 (1993).  To determine

whether quasi-judicial immunity applies to a nonjudicial officer, the nature of the action

performed is important.  Curry, 297 F.3d at 948.  Thus, I must determine whether Hostmann's act

of failing to deliver the 3,000 timber mats to Bangor Hydro was a discretionary function that is

protected by quasi-judicial immunity.

The role of the receiver is equivalent to that of a bankruptcy trustee.  Beck v. Fort James

Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 971 (9th Cir. 2005) ("just like the equity

receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved

him, administering property that has come under the court's control").  Like trustees, receivers

often must use their discretion to make difficult business decisions.  See Mosser v. Darrow, 341

U.S. 267, 273-274 (1951).  The "receiver functions as an arm of the court by making decisions

about the operation of a business that the judge otherwise would have to make."  New Alaska,

869 F.2d at 1303, n.6.  For this reason, courts have protected receivers from liability for

discretionary acts committed during the receivership.  Id. at 1303-04; Ramirez v. Pasternak, No.

09-56034, 2011 U.S. App. LEXIS 443, at *2-3 (9th Cir. Jan. 7, 2011); FTC v. Lucas Lawcenter

Inc., No. SACV 09-0770, 2010 U.S. Dist. LEXIS 130222, at *6 (C.D. Cal. Nov. 29, 2010).

The act in question here involves Hostmann's failure to deliver timber mats that had been

fully paid for by Bangor Hydro.  Hostmann's decision to withhold (or deliver) the timber mats is

5 - OPINION & ORDER

a discretionary decision within the confines of the Order Appointing Receiver from the <u>Wells</u>

<u>Fargo Capital Finance</u> action.  As receiver, Hostmann was ordered to "take possession of,

control, manage, and operate the businesses and properties of NPG...for the purpose of

preserving and protecting the Collateral[2] and for the purpose of liquidating the Collateral and

using the proceeds thereof to pay the obligations of NPG[.]"  Order Appointing Receiver, at 3.

Other provisions in the Order Appointing Receiver recognize the discretion that is involved in

managing and operating NPG in a receivership.  <u>Id.</u> at 4 ("...as [Hostmann] shall determine to be

appropriate, to protect and maintain the businesses and properties...including...Collateral"); <u>Id.</u> at

11 ("[Hostmann] will have complete and final authority regarding the operation of the businesses

and properties of NPG...subject only to the direction and control of this Court.").

Hostmann was appointed receiver to manage competing business interests and demands

of several parties.  As stated in the order approving the sale of NPG's assets, the asset purchase

agreement "reflects the *exercise of the Receiver's sound business judgment* and a proper exercise

of the Receiver's fiduciary duties.  Approval at this time of the Purchase Agreement, and the

transactions contemplated thereby, is in the best interests of NPG, its creditors, its shareholders,

and other parties in interest."  Order Authorizing Sale, at 5, ¶¶ 8-9 (emphasis added).  The

decision to not deliver the timber mats was discretionary and squarely within the confines of

Hostmann's duties as receiver.

Bangor Hydro argues that Hostmann acted outside the scope of its authority and thus,

immunity should not apply.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14.  The case cited in

---

[2]Collateral has been defined to include goods and inventory.  Order Appointing Receiver, at 2.

support involves a receiver who had illegally broken into and seized real property and then

refused to relinquish the property once he learned the estate did not have title to the property.

Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967).  The Leonard Court found that the

receiver should have followed established, lawful procedures to secure the property.  Id. at 560-

61.  Unlike the receiver in Leonard, Hostmann's actions were lawful and within the scope of

authority granted in the Order Appointing Receiver.

Finally, Hostmann took steps in the Wells Fargo Capital Finance action to protect Bangor

Hydro's potential claim.  Funds from the net proceeds of the sale to Bridgewell Resources have

been set aside, including a specific account in the amount of $663,131.  Order Authorizing Sale,

at 10, ¶E; Decl. of Edward Hostmann in Supp. of Def.'s Mot. for Summ. J. ("Hostmann Decl.")

¶6.  Bangor Hydro has submitted a proof of claim for $663,131 for damages related to the

undelivered timber mats.  Hostmann Decl. Ex. 3.  This amount is equal to the economic damages

that Bangor Hydro has claimed in this case.  Am. Compl. ¶59.  Further, the Wells Fargo Capital

Finance Court has retained jurisdiction to resolve "any disputes, controversies or claims arising

out of or relating to the Purchase Agreement[.]" Id. at 14, ¶P.  The proper venue for Bangor

Hydro's grievance is in the Wells Fargo Capital Finance action, where it should pursue its proof

of claim.

Bangor Hydro's claim against Hostmann for violation of U.C.C. § 2-502 or conversion is

barred because of quasi-judicial immunity.  Because quasi-judicial immunity precludes Bangor

Hydro's sole claim against Hostmann, the other remaining defenses will not be addressed.

/ / /

/ / /

7 - OPINION & ORDER

CONCLUSION

Defendant Hostmann's motion for summary judgment [# 38] is granted.

IT IS SO ORDERED.


Dated this  28th   day of April, 2011.


 /s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

8 - OPINION & ORDER